

NEW YORK UNIVERSITY
NYU
STERN
LEONARD N. STERN
SCHOOL OF BUSINESS

**FILED**

MAY – 6 2014

CLERK
U.S. BANKRUPTCY COURT
By_____
DEPUTY CLERK

DEPARTMENT OF FINANCE

HENRY KAUFMAN MANAGEMENT CENTER
44 WEST FOURTH STREET, SUITE 9-190
NEW YORK, NY 10012-1126
TEL: 212-998-0300
FAX: 212-995-4233

April 29th, 2014

U.S. Bankruptcy Court, District of Alaska
605 West 4th Avenue, Suite 138
Anchorage, AK 99501

Case No. 06-60001

Dear Chief Judge Gary A. Spraker and Mr. Jan Ostrovsky,

My name is Katherine Waldock and I am a doctoral candidate at the New York University Stern School of Business. I am writing in order to request an academic exemption from PACER fees associated with the Bankruptcy Court of the District of Alaska. I am working as a co-author with Rustom M. Irani, an Assistant Professor of Finance at the University of Illinois at Urbana-Champaign, and Hanh T. Le, an Assistant Professor of Finance at the University of Illinois at Chicago, on a research project designed to investigate the impact of credit markets on corporate policies.

As part of this project, we are studying the role of distressed debt investors in Chapter 11 reorganization. Our aim is to categorize the various strategies adopted by these investors and measure the impact of these strategies on real firm policies such as employment and plant productivity as well as their long-term impacts on corporate performance. My co-authors and I have received approval from the U.S. Census Bureau and the Internal Revenue Service to access restricted-use micro data from surveys of manufacturing plants. Please see the attached document for more information about our Census approval.

We would like to supplement the sources already listed with information from PACER. Since we are studying investor participation in the reorganization process, the relevant documents may include but are not limited to: bankruptcy petitions (2-50 pages including schedules and lists of claimants), creditor and equity committees (1-25 pages each), monthly operating reports (10-20 pages each), Chapter 11 plans (50-150 pages each), and motions for objections (20-30 pages each). We estimate that we will access an average of 655 pages per case, amounting to a fee of $65.50 per case.[1] Based on an initial sample of large bankruptcies obtained from New Generation Research, there was 1 case from 1992-2012 in the District of Alaska that involved pre-petition assets of over $100 million. We would like to expand our sample to include firms with over $10 million in assets from 2004-2013 and we estimate that an additional 19 cases filed in the District of Alaska will meet these criteria.[2] In total, our estimated cost of PACER usage from your district ranges from $65.50 to $1,244.50, and we believe that this imposes an unreasonable burden on our research given the scope of the study.

As described in the Census approval form, the start date of the project was February 17th, 2014 and the duration of the project is 36 months. We request an exemption from PACER fees effective upon receipt of this letter and extending until May 31st, 2015.

In accordance with Judicial Conference policy, we agree not to sell, transfer, redistribute, or use for commercial purposes the data obtained through PACER. The results that we intend to publish will be sufficiently aggregated so that no bankruptcy- or firm-specific information will be disclosed. We hope that by contributing to the general understanding of investor participation in Chapter 11, we will promote public access to information about corporate bankruptcies.

---

[1] This estimate assumes that the average petition length is 20 pages and is filed once, the average creditor and equity committee description lengths are 10 pages and are each filed once, the average monthly operating report length is 15 pages, the average reorganization plan length is 100 pages and is submitted an average of 3 times, and the average objections motion length is 25 pages and is submitted an average of 3 times. The average bankruptcy duration in our current sample is 16 months.

[2] This estimate is based on the total number of business bankruptcies in the District of Alaska from 2004 to 2013. The proportion of cases with pre-petition assets over $10 million is based on 2007 statistics on business size published by the U.S. Census Bureau.

April 29th, 2014
Page 2 of 2

If the exemption is granted, please notify the PACER Service Center by mailing a copy of the exemption order to the address below. Please apply fee exemptions to PACER account **kw2888**. In addition, please send an electronic copy of the exemption order to kwaldock@stern.nyu.edu.

PACER Service Center
P.O. Box 780549
San Antonio, TX 78278
(800) 676-6856

Thank you for your consideration.

Sincerely,

Katherine Waldock
Doctoral Candidate in Finance
New York University
Stern School of Business
KMC Suite 9-197
44 W. 4th Street
New York, NY 10012
(203) 536-6200
kwaldock@stern.nyu.edu

Rustom M. Irani
Assistant Professor of Finance
University of Illinois at Urbana-Champaign
College of Business
444 Wohlers Hall
1206 S. 6th Street
Champaign, IL 61820
(217) 244-2239
rirani@illinois.edu

Hanh T. Le
Assistant Professor of Finance
University of Illinois at Chicago
College of Business
University Hall, Office 2427
601 S. Morgan Street
Chicago, IL 60607
(312) 996-0720
hanhle@uic.edu

Center for Economic Studies
Proposal Review Synopsis

#1212 - "Credit Markets and Real Corporate Policies"

RDC - Chicago

Rustom Irani - University of Illinois, Urbana-Champaign
Hanh Le - University of Illinois at Chicago, College of Business Administration
Katherine Waldock - New York University, Stern School of Business

Requested Duration - 36 Months

Funding - University of Illinois Research Board, Faculty research budget

This project will investigate the impact of credit markets (real estate collateral values and private credit agreements) on plant level patterns of investment and employment. Benefits to the Census Bureau include linking external data on financial contracts and real estate prices and local supply elasticities to produce population estimates of how creditor intervention impact firm behavior. These estimates will be compared to existing estimates from other datasets and studies to explore the how well the LBD captures economic activity.

The researchers request all available years from 1993 through 2007 for each dataset plus additional years through 2012 if available.

*Annual Survey of Manufactures (ASM)*
*Census of Manufactures (CMF)*
*Longitudinal Business Database (LBD)*
*Auxiliary Establishment - ES9200 (AUX)*
*Standard Statistical Establishment Listing - Name & Address File (SSL-NA)*
*Compustat-SSEL Bridge File*

Research and public use datasets to be supplied by the researchers include:

*Amir Sufi's website, information on covenant violations*
*Compustat*
*Standard & Poor's Capital IQ*
*Reuters Loan Pricing Corporation Deal Scan*
*Bankruptcy information from:*
  - *Lynne M. LoPucki's Bankruptcy Research Database*
  - *New Generation Research's BankruptcyData.com*
  - *Reorg Research*
  - *Public Access to Court Documents (PACER)*
*Office of Federal Housing Enterprise Oversight, data on real estate prices*
*Global Real Analytics, data on commercial real estate prices*

*Saiz (2009), data on Metropolitan Statistical Area local housing supply elasticities*
*Federal Reserve, information on interest rates*
*National Council of Real Estate Investment Fiduciaries, Property Index*

The CES Project Review Committee and expert reviewers evaluated this proposal on the basis of five criteria: (1) Benefit to Census Bureau programs, (2) Scientific merit, (3) Feasibility, (4) Disclosure risk, and (5) Need for access to confidential microdata. Two content reviewers, Reviewer 1 and Reviewer 2, both rated the proposal as **Good**. The Census Bureau's Policy Coordination Office reviewed the proposal for conformance with Census Bureau policies, and found it to be acceptable.

**Benefits**

The researchers propose to benefit Census Bureau programs under:

- *Criterion 5. Understanding and/or improving the quality of data produced through a Title 13, Chapter 5 survey, census, or estimate.*

- *Criterion 11. Preparing estimates of population and characteristics of population as authorized under Title 13, Chapter 5.*

The researchers propose benefits under Criterion 5 by comparing firm level measures of economic performance between the LBD and Compustat. They would also provide Criterion 5 benefits by creating bridge files between Census Bureau files and a number of outside data sources, for use by future researchers. They would also assess and analyze divergence in the identifiers across these files. Finally, through this project they would contribute to efforts to extend the LBD-Compustat link, beyond 2005.

They propose benefits under Criterion 11 by preparing estimates of firm-level investment, employment, payroll, birth and death, and performance, across MSAs and industries.

Section VI of the proposal also mentions benefits under Criterion 7, but this is presumably an error.

Both content reviewers agree that the project would provide benefits to the Census Bureau. Reviewer 2 notes specifically that the benefits proposed under Criterion 5 are solid, but that the estimates proposed under Criterion 11 would be more limited in value. Reviewer 1 describes the benefits as being "reasonable" but "not…substantial."

**Scientific Merit**

Both content reviewers find the project to address important scientific questions. Reviewer 1 qualifies this assessment, though, by noting that a shift in the project's analytical focus could better address the effects of real estate prices (and assets) on consumer and firm outcomes.

### Feasibility

The project appears to be feasible in terms of researcher qualifications, data requested, and timeframe. Both content reviewers note issues with the proposed methodology, however:

- Both reviewers have concerns about the potential for bias.
- For Reviewer 1, it is unclear how firm real estate value would be calculated, beyond the years for which such data are available.
- Reviewer 1 also notes potential measurement error for real estate prices at the MSA level.

These concerns are discussed in more detail in Section (8) of the respective content reviews.

### Disclosure Risk

The disclosure risks are manageable. The disclosure reviewer notes a slight possibility of thin cells, but that the researchers express a willingness to adjust the analysis if necessary in order to minimize disclosure risks. S/he also points out that graphs mentioned on page 15 of the proposal are not described in the section on Output to Be Submitted for Disclosure Avoidance (pp. 28–30). It is unclear therefore whether the researchers intend to release these graphs.

### Need for Confidential Data

The project requires access to confidential Census Bureau microdata.

### Committee Evaluation

The CES Project Review Committee evaluated this proposal in light of reviewer comments and its own assessment. Both content reviewers rate this as a good proposal that addresses important scientific questions and that has the potential to benefit the Census Bureau. Reviewer 2 reviewed this project in an earlier form, and finds that the researchers have addressed some of his/her comments. But both reviewers—in particular Reviewer 1—raise methodological concerns. In addition Reviewer 1 points out that the two key lines of inquiry in the project are only loosely linked.

This project requests years of data for one or more datasets that do not reside in the CES data warehouse at present. The Center for Economic Studies cannot guarantee that such data will be available during the course of this project given the uncertainty of data release schedules by source divisions or agencies, but will make reasonable efforts to provide all requested data. The inability of the Census Bureau to provide requested data does not by itself constitute sufficient grounds for an extension of project duration.

In accordance with the June 2012 agreement between the Census Bureau and the IRS regarding access to Federal Tax Information, conditional on Census Bureau approval this proposal must be submitted to the IRS for its review and approval prior to project start.

As a result of its deliberations the committee recommended that the project be approved.

**Decision:**     **Approved**     **June 24, 2013**



**NYU**
NEW YORK UNIVERSITY
LEONARD N. STERN SCHOOL OF BUSINESS

DEPARTMENT OF FINANCE
44 WEST FOURTH STREET, SUITE 9-190
NEW YORK, NY 10012-1126

NEW YORK NY 100
30 APR 2014 PM 7 L



RECEIVED
MAY - 5 2014
CLERK
U.S. BANKRUPTCY COURT
By _____
Deputy Clerk

9950122%99

U.S. Bankruptcy Court
District of Alaska
c/o Jan Ostrovsky, Clerk of Court
605 West 4th Avenue, Suite 138
Anchorage, AK 99501